DUNLEAVY v. YATES CONSTRUCTION CO.

[114 N.C. App. 196 (1994)]

———————————

RACHEL DUNLEAVY AND JOHNNY GLENN COBB, ADMINISTRATORS OF THE ESTATE OF JOHNNY GLENN COBB, II, DECEASED, PLAINTIFFS v. YATES CONSTRUCTION COMPANY, INC.; SPRINGFIELD PROPERTIES, INC.; ROBERT G. YATES; DOUGLAS B. YATES; AND DONALD BAYNES, DEFENDANTS

No. 9318SC370

(Filed 5 April 1994)

1. **Master and Servant § 87 (NCI3d) — trench cave-in — death of employee — insufficient evidence for Woodson claim**

Plaintiffs' forecast of evidence was insufficient to establish a *Woodson* claim against a corporate employer and its officers for the death of an employee in a trench cave-in while laying sewer pipe, although the walls of the trench were not shored, sloped, braced or otherwise supported when the trench reached a depth of five feet as required by OSHA regulations, where the forecast of evidence tended to show that the employer had only one previous citation relating to trenching safety procedures; the employer's officers were not at the job site when the accident occurred; the employer's foreman believed the soil at the job site was stable and had no reason to believe otherwise; the employer had ordered trench boxes from another construction site on the day of the accident but they had not yet arrived; the employer's foreman had traveled to another part of the job site believing that the crew would not complete enough work to exceed a depth of five feet in the trench before he returned; and the employer's foreman did not consciously, intentionally, and personally order the decedent to work in a portion of the trench that was between five and eight feet in depth.

**Am Jur 2d, Master and Servant §§ 164, 167.**

DUNLEAVY v. YATES CONSTRUCTION CO.

[114 N.C. App. 196 (1994)]

**2. Labor and Employment § 190 (NCI4th)— trench cave-in— death of independent contractor's employee — nondelegable duty of care — claim against developer — insufficient evidence**

In an action to recover for the death of an independent contractor's employee in the cave-in of a trench which had not been shored or sloped when it reached a depth of five feet as required by OSHA regulations, plaintiffs' forecast of evidence was insufficient to establish a claim against the developer for breach of a nondelegable duty of care arising from an inherently dangerous activity where it tended to show that the developer did not know and had no reason to know of the circumstances creating the danger to the decedent; the developer was not versed in the OSHA requirements for trench digging; and although the developer's liaison with the independent contractor had been at the job site earlier the day of the accident, he left before the trench depth began to exceed five feet and was not at the site when the accident occurred.

**Am Jur 2d, Independent Contractors §§ 40, 42.**

**Liability of employer with regard to inherently dangerous work for injuries to employees of independent contractor. 34 ALR4th 914.**

Appeal by plaintiffs from order entered 3 February 1993 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 1 February 1994.

*Smith, Follin & James, by J. David James, and Ling & Farran, by Stephen D. Ling, for plaintiffs-appellants.*

*Henson Henson Bayliss & Sue, by Jack B. Bayliss, Jr., of counsel, for defendants-appellees Yates Construction Company, Inc., Robert G. Yates and Douglas B. Yates.*

*Adams Kleemeier Hagan Hannah & Fouts, by J. Alexander S. Barrett and Edward L. Bleynat, Jr., of counsel, for defendant-appellee Springfield Properties, Inc.*

JOHNSON, Judge.

Plaintiffs appeal from a summary judgment order entered in favor of defendants Robert G. Yates, Douglas B. Yates, Yates Construction Company (Company), and Springfield Properties,

Inc. (Springfield). We summarize the facts of this case in part from *Dunleavy v. Yates Construction Co.*, 106 N.C. App. 146, 149-51, 416 S.E.2d 193, 195-96, *disc. review denied*, 332 N.C. 343, 421 S.E.2d 146 (1992):

> In October, 1985, Company, an independent contractor, contracted with Springfield to construct, among other things, sewer lines within the Raven Ridge Subdivision located in Guilford County, North Carolina. Springfield owned the property on which the subdivision was being built. At this time, Johnny Glenn Cobb, II (Cobb) worked for Company as a member of a "new and inexperienced pipe crew." Cobb had no prior experience on a pipe crew. On 17 October 1985, Cobb and the other members of the crew arrived with their equipment at the Raven Ridge work site to begin installing the sewer lines. Before 17 October 1985, the pipe crew had been digging trenches to lay water lines at a location different than the Raven Ridge work site. They did not begin any trench work that day because Baynes, the crew foreman, did not plan to make much progress with such a new and inexperienced crew.
>
> On the morning of 18 October 1985, the pipe crew began the first leg of the trench work at the Raven Ridge work site. The soil at the work site was "firm and stable." At no time that morning did the depth of the trench exceed five feet. Douglas Yates, vice president of Company, "requested that trench boxes owned by the company be transferred from another construction site for use during the progress of the construction work at the Raven Ridge subdivision . . . ." By the afternoon, the pipe crew had begun the second leg of the trench work. In the early stages of this second leg, the trench was not to exceed five feet in depth. Baynes was called away to another side of the project, and while he was gone, the operator of the backhoe made more progress than Baynes had expected. In fact, the operator of the backhoe was digging well ahead [of] . . . the pipe laying crew. When Baynes left, the trench did not exceed five feet in depth. While Baynes was gone, however, the digging increased at such a rate that before Baynes could return to the trench, the trench exceeded five feet in depth in certain parts. According to Robert Yates, president of Company, "it was the policy of the Company to use trench boxes or slope the sides of a trench when conditions warranted such action, including whenever the depth of a trench

DUNLEAVY v. YATES CONSTRUCTION CO.

[114 N.C. App. 196 (1994)]

exceeded five feet . . . ." It is undisputed that Occupational Safety and Health Act (OSHA) regulations in effect at the time required trenches of more than five feet in depth to be properly supported. This trench, however, was approximately 150 feet long, the walls of the trench were vertical and had not been shored, sloped, braced, or otherwise supported to prevent a collapse, and the trench boxes which Douglas Yates had requested had not yet arrived. While Cobb was in a portion of the trench where the depth exceeded five feet, a small portion of one side of the trench collapsed and struck Cobb in the head resulting in his death. Cobb, contrary to OSHA regulations, had not been provided a hard helmet and consequently was not wearing such protective equipment at the time of his death.

The plaintiffs, in addition to filing a claim for workers' compensation benefits, filed a complaint against Company, Robert Yates, Douglas Yates, Baynes, and Springfield. As to Company, Robert Yates, Douglas Yates, and Baynes, the plaintiffs alleged that Cobb's death was the result of a deliberate and intentional assault and willful, wanton, and reckless negligence. As against Springfield, the plaintiffs alleged that Springfield was liable to the plaintiffs on the theories of inherently dangerous activity, negligent selection of Company, and negligent retention of Company. On 17 July 1989, Springfield filed a motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6). . . . On 27 July 1989, the remaining defendants jointly filed an answer, and on 18 August 1989, they filed a motion to dismiss under Rule 12(b)(6), and in the alternative, for summary judgment under N.C.G.S. § 1A-1, Rule 56. . . . On 26 October 1989, the plaintiffs made a motion to stay all proceedings pending the North Carolina Supreme Court's resolution of *Woodson v. Rowland*, 92 N.C. App. 38, 373 S.E.2d 674 (1988), *disc. review allowed*, 324 N.C. 117, 377 S.E.2d 247 (1989). On 8 November 1989, the trial court denied the plaintiffs' motion to stay and granted summary judgment for Company, Robert Yates, Douglas Yates, and Baynes. The next day, the trial court granted Springfield's motion to dismiss the plaintiff's complaint. The plaintiffs appealed to this Court which, in an unpublished opinion, affirmed the trial court's orders based on *Woodson*, 92 N.C. App. 38, 373 S.E.2d 674. *Dunleavy v. Yates Constr. Co.*, 103 N.C. App. 804, 407 S.E.2d 905 (1991). The plaintiffs then

petitioned the North Carolina Supreme Court for discretionary review of this Court's decision, and on 6 November 1991, the North Carolina Supreme Court allowed the plaintiffs' petition for discretionary review "for the limited purpose of entering the following order: the case is remanded to the Court of Appeals for reconsideration in light of" *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). *Dunleavy v. Yates Constr. Co.*, 330 N.C. 194, 412 S.E.2d 54 (1991).

On remand, our Court in *Dunleavy v. Yates Construction Co.*, 106 N.C. App. 146, 416 S.E.2d 193 affirmed the trial court's order granting Springfield's motion to dismiss the plaintiffs' claims for negligent selection and retention; affirmed the trial court's order granting Baynes' motion for summary judgment; reversed and remanded the trial court's order granting Springfield's motion to dismiss the plaintiffs' claim for breach of a nondelegable duty; and remanded the trial court's order granting summary judgment for Company, Robert G. Yates, and Douglas B. Yates for a *de novo* hearing. Back at the superior court level, discovery was completed and after summary judgment orders were entered in favor of defendants Company, Robert G. Yates, Douglas B. Yates, and Springfield, plaintiffs appealed to our Court.

Plaintiffs argue that they proffered sufficient evidence to withstand summary judgment (1) on the claim against Robert G. Yates, Douglas B. Yates, and Company, and (2) on the claim against Springfield. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. North Carolina General Statutes § 1A-1, Rule 56 (1990). "In summary judgment, the burden is on the moving party to (1) prove an essential element of the opposing party's claim is non-existent, or (2) show through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Rose v. Steen Cleaning, Inc.*, 104 N.C. App. 539, 540, 410 S.E.2d 221, 222 (1991). We address plaintiffs' claims separately.

### Plaintiffs' Claim Against Robert G. Yates, Douglas B. Yates, and Company

[1] We note that Robert G. Yates and Douglas B. Yates, as officers, were acting in capacities as agents for their principal, Com-

**DUNLEAVY v. YATES CONSTRUCTION CO.**

[114 N.C. App. 196 (1994)]

pany, on the date the accident herein occurred. Our Court has stated "[t]he principal is liable for the acts of his agent, whether malicious or negligent, and the employer for similar acts of his employees[.] . . . The test is whether the act was done within the scope of his employment and in the prosecution and furtherance of the business which was given him to do." *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 492, 340 S.E.2d 116, 122, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986) (citation omitted). "A corporation can act only through its agents, which include its corporate officers." *Woodson*, 329 N.C. at 344, 407 S.E.2d at 231 (citation omitted). Therefore, the following analysis of the actions of Robert G. Yates and Douglas B. Yates will apply to Company as well.

The standard to be applied to the conduct of Robert G. Yates and Douglas B. Yates is found in *Woodson v. Rowland*, that "when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer." *Id.* at 340-41, 407 S.E.2d at 228. The *Woodson* Court placed great emphasis on the extreme facts in *Woodson*. We have reviewed the evidence in the case *sub judice* and find that the actions of Robert G. Yates and Douglas B. Yates do not rise to this "substantial certainty" level as in *Woodson*.

Some key differences between the facts in *Woodson* and the instant case are the following: In *Woodson*, the employer had been cited four times in the previous six and a half years for violating regulations governing trenching safety procedures; in the instant case, the employer had one previous citation relating to trenching safety procedures. In *Woodson*, the employer was at the job site when the accident occurred; in the instant case, Robert G. Yates was not in town the day of the accident and Douglas B. Yates had stopped by the site briefly the morning of the accident. In *Woodson*, the general contractor's foreman, working the previous day on a separate trench which was not sloped, shored or braced, refused to let his men work until they had a trench box, and yet the employer ordered his crew to work; in the instant case, employers' foreman, Mr. Baynes, a man with many years experience in the field, believed the soil was stable and had no reason to believe otherwise. In *Woodson*, a trench box was available for

use on the day of the accident and the employer chose not to use it; in the instant case, the employers had ordered trench boxes for the site but they had not yet arrived. In *Woodson*, the employer knew the trench had a depth of fourteen feet; in the instant case, employers' foreman, Mr. Baynes, had traveled to another part of the job site believing that the crew would not complete enough work to exceed a depth of five feet in the trench before he returned. Finally, in *Woodson*, the employer consciously, intentionally and personally ordered the decedent to work in the fourteen foot trench; in the instant case, employers' foreman, Baynes, did not consciously, intentionally and personally order decedent to work in a portion of the trench which was somewhere between five and eight feet. Based on the foregoing, we find that the conduct of Robert G. Yates and Douglas B. Yates did not rise to the level of misconduct described in *Woodson*.

Therefore, we find that summary judgment was properly entered by the trial court as to defendants Robert G. Yates, Douglas B. Yates, and Company.

### Plaintiffs' Claim Against Springfield

[2] As to plaintiffs' claim against Springfield for breach of the nondelegable duty of care arising from an inherently dangerous activity, in *Dunleavy v. Yates Construction Co.*, 106 N.C. App. at 153, 416 S.E.2d at 197, our Court stated:

> Where a landowner hires an independent contractor to perform an inherently dangerous activity, and the owner knows or should know of the circumstances creating the danger, the owner "has the nondelegable duty to the independent contractor's employees 'to exercise due care to see that . . . [these employees are] provided a safe place in which to work and proper safeguards against any dangers as might be incident to the work [are taken.]' " [(Citation omitted)]. *Woodson*, 329 N.C. at 357, 407 S.E.2d at 238. Read as a whole and viewed liberally, the plaintiffs' complaint alleges sufficient facts to support the substantive elements of their claim against Springfield for breach of this nondelegable duty. The plaintiffs alleged that Springfield hired Company, an independent contractor, to perform an inherently dangerous activity, i.e., digging a trench without required shoring, bracing, or other supportive devices, and that Springfield "had direct knowledge" of the circumstances creating the danger. Furthermore, the plaintiffs alleged that Springfield

FALLS v. N.C. FARM BUREAU MUT. INS. CO.

[114 N.C. App. 203 (1994)]

breached this duty and that the breach proximately caused their damages.

A review of the evidence presented herein indicates that Springfield did not know and had no reason to know of the circumstances creating the danger in the instant case, nor did Springfield have direct knowledge of the circumstances creating the danger. Springfield's liaison to Company was an independent contractor, Ralph H. Morgan; Springfield was not even versed in the OSHA requirements for trench digging. Further, Springfield did not know that Company had commenced its work at the site. Like the owner of the property where the accident occurred in *Woodson*, Springfield was not on notice of any dangerous condition. *See also Cook v. Morrison*, 105 N.C. App. 509, 413 S.E.2d 922 (1992). Finally, although Mr. Morgan had been at the site earlier the day of the accident, he left before the trench depth began to exceed five feet, and was not at the site when the accident occurred.

As a result, we find that summary judgment was properly entered by the trial court as to defendant Springfield.

The decision of the trial court is affirmed.

Judges EAGLES and LEWIS concur.