JAMES DAVID LILLEY, Plaintiff, SHEILA LILLEY, Intervenor Plaintiff v. BLUE RIDGE ELECTRIC MEMBERSHIP CORPORATION, and FLOYD S. PIKE ELECTRICAL CONTRACTOR, INCORPORATED, Defendants

No. COA97-1219

(Filed 18 May 1999)

**Negligence— installing utility poles—mountainous terrain— inherently dangerous activity—activity not collateral— knowledge by defendant**

Summary judgment was improperly granted for defendant Blue Ridge Electrical Membership Corporation in a negligence action arising from an injury suffered by plaintiff James Lilley while installing a utility pole in steep, mountainous terrain. Setting utility poles forty-five to fifty feet in length and weighing approximately one ton on rugged mountain terrain described as "straight up and down," making it "difficult to stand or walk," at a minimum presents a factual question of whether there is a recognizable and subtantial danger inherent in the work. The case relied upon by defendant to argue that the injuries resulted from a collateral act, *Hooper v. Pizzagalli Construction Co.*, 112 NC App. 400, involved an underlying activity determined not to be inherently dangerous as a matter of law and the argument that Blue Ridge cannot be held liable because the contract did not describe or establish how the work was to be done contradicts the public policy behind the inherently dangerous activity doctrine. Finally, there was sufficiently forecast knowledge of the circumstances by Blue Ridge to survive summary judgment.

Appeal by plaintiff and intervenor plaintiff from order entered 3 July 1997 by Judge Melzer A. Morgan, Jr., in Wilkes County Superior Court. Heard in the Court of Appeals 21 May 1998.

*Blanchard, Jenkins & Miller, P.A., by Robert O. Jenkins, and Cunningham & Gray, P.A., by George G. Cunningham, for plaintiff-appellant.*

*George E. Francisco for intervenor plaintiff-appellant.*

*Parker, Poe, Adams & Bernstein, L.L.P., by David N. Allen, Josephine H. Hicks and John E. Grupp, for defendant-appellee Blue Ridge Electric Membership Corporation.*

JOHN, Judge.

Plaintiff James David Lilley and his wife, intervenor plaintiff Sheila Lilley (plaintiffs), appeal the trial court's grant of summary judgment in favor of defendant Blue Ridge Electric Membership Corporation (Blue Ridge). For the reasons set forth below, we reverse the order of the trial court.

Pertinent factual and procedural information includes the following: Blue Ridge distributes electricity in Watauga County, North Carolina. In 1993, Blue Ridge began upgrading its distribution system in an area of the county known as Lost Ridge. Blue Ridge contracted with defendant Floyd S. Pike Electrical Contractor, Inc. (Pike), to perform work in connection with the project. Plaintiff was employed by Pike as a lineman.

Plaintiff's duties included digging holes in which to place wooden power distribution poles, guiding the poles to the holes, and setting the poles. The utility poles involved were approximately forty-five to fifty feet in length and weighed approximately one ton. The terrain on Lost Ridge was mountainous, being described by Pike's Safety Supervisor as essentially "straight up and down."

On 2 August 1994, plaintiff and other Pike employees were moving poles from their drop-off point to locations designated for installation. Plaintiff was attempting to guide a particular pole to its place using a rock bar, an eight foot long steel pole approximately one inch in diameter, as a winch around which a rope was wound. The rock bar was stuck in the ground at the base of a large rock, with plaintiff and two other employees holding the rock bar. As pressure from the winch was applied to the rope wound around the rock bar, the rope slid up the rock bar, bending the rock bar back. Ultimately, the rope slid off and the rock bar sprang back, striking plaintiff in the forehead and face. He suffered a fractured skull and frontal lobe injury which rendered him permanently and totally disabled.

Plaintiff filed the instant negligence action against Blue Ridge on 14 March 1996. His complaint was amended 3 June 1996 to include Pike as a defendant and add two additional claims. Intervenor plain-

tiff's subsequent "Motion to Intervene" was allowed in an order filed 11 September 1996, and summary judgment was granted in favor of Blue Ridge in an order filed 3 July 1997. Plaintiffs timely appealed.

Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56 (1990); *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). A summary judgment movant bears the burden of showing that

> (1) an essential element of plaintiff's claim is nonexistent; (2) plaintiff cannot produce evidence to support an essential element of its claim; or (3) plaintiff cannot surmount an affirmative defense raised in bar of its claim.

*Lyles v. City of Charlotte*, 120 N.C. App. 96, 99, 461 S.E.2d 347, 350 (1995), *rev'd on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996). A court ruling upon a motion for summary judgment must view all the evidence in the light most favorable to the non-movant, accepting all its asserted facts as true, and drawing all reasonable inferences in its favor. *Kennedy v. Guilford Tech. Community College*, 115 N.C. App. 581, 583, 448 S.E.2d 280, 281 (1994). Plaintiff also correctly interjects that negligence actions are not frequently susceptible to summary judgment. *See Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983).

The parties do not dispute that Pike was an independent contractor employed by Blue Ridge. It is well settled in this jurisdiction that

> [g]enerally, one who employs an independent contractor is not liable for the independent contractor's negligence unless the employer retains the right to control the manner in which the contractor performs his work.

*Woodson v. Rowland*, 329 N.C. 330, 350, 407 S.E.2d 222, 234 (1991). However, our Supreme Court has recognized an exception to this rule, in which

> [o]ne who employs an independent contractor to perform an inherently dangerous activity may not delegate to the independent contractor the duty to provide for the safety of others.

*Id.* at 352, 407 S.E.2d at 235. This duty is nondelegable when (1) the independent contractor is hired to perform an inherently dangerous

activity and (2) the general contractor "knows or should know of the circumstances creating the danger." *Dunleavy v. Yates Construction Co.*, 114 N.C. App. 196, 202, 442 S.E.2d 53, 56 (1994) (quoting *Dunleavy v. Yates Construction Co.*, 106 N.C. App. 146, 153, 416 S.E.2d 193, 197, *disc. review denied*, 332 N.C. 343, 421 S.E.2d 146 (1992)). Thus, if the activity engaged in by plaintiff was inherently dangerous and Blue Ridge knew of the circumstances creating the danger, the latter would be charged with a non-delegable duty to "exercise due care to see that [plaintiff] . . . was provided a safe place in which to work and proper safeguards against any dangers as might be incident to the work." *Woodson*, 329 N.C. at 357, 407 S.E.2d at 238.

In defining "inherently dangerous," our Supreme Court stated "[i]t is not essential . . . that the work should involve a major hazard." *Woodson*, 329 N.C. at 351, 407 S.E.2d at 235. Rather,

[i]t is sufficient if there is a recognizable and substantial *danger inherent in the work*, as distinguished from a *danger collaterally created* by the independent negligence of the contractor, which latter might take place on a job itself involving no inherent danger.

*Id.* In addition, "inherently dangerous activities are susceptible to effective risk control through the use of adequate safety precautions." *Id.* at 351, 407 S.E.2d at 234.

Thus, as a threshold matter, we must consider whether the activity engaged in by plaintiff was "inherently dangerous" as a matter of law. Blue Ridge maintains the trial court properly resolved this issue in the negative. Plaintiff disagrees, maintaining

it is a question of fact for a jury whether the work being performed by Pike Electric under subcontract from Blue Ridge Electric on August 2, 1994 was inherently dangerous.

Both parties cite *Woodson*. Discussing whether a trenching situation was inherently dangerous as a matter of law, the Court therein acknowledged

that in some cases such a determination [that an activity is inherently dangerous] can, as a matter of law be made. For example, *Evans* held as a matter of law that maintaining an open trench in a heavily populated area is inherently dangerous from the standpoint of the public, and the landowner who hired an independent contractor could be held liable for the injuries of a

child who fell into the trench negligently left open by the independent contractor. . . .

Similarly, this Court has held as a matter of law that certain activities resulting in injury are not inherently dangerous. . . .

Despite the fact that some activities are always inherently dangerous while others may never be, unlike the dissenters, we do not believe every act can be defined as inherently dangerous or not, regardless of the attendant circumstances. Though bright-line rules are beneficial where appropriate, their usefulness can be limited. . . . Particular trenching situations . . . appropriately require a jury to decide the inherently dangerous issue.

*Woodson*, 329 N.C. at 353-54, 407 S.E.2d at 235-36. A survey of post-*Woodson* decisions reveals varied constructions of the foregoing language. *See, e.g., Simmons v. North Carolina Department of Transportation*, 128 N.C. App. 402, 406, 496 S.E.2d 790, 793 (1998) ("[w]hether an activity is inherently or instrinsically dangerous is a question of law"); *Brown v. Friday Services, Inc.*, 119 N.C. App. 753, 757, 460 S.E.2d 356, 359, *disc. review denied*, 342 N.C. 191, 463 S.E.2d 234 (1995) ("the practice of judicially determining that certain activities, as a matter of law, are inherently dangerous while others not, has since been rejected by our Supreme Court in *Woodson* . . . ."); *Hooper v. Pizzagalli Construction Co.*, 112 N.C. App. 400, 406, 436 S.E.2d 145, 149-50 (1993), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 516 (1994) (summary judgment properly granted, where, *inter alia*, "the work performed [plumbing] was not an inherently dangerous activity").

We believe our Supreme Court's holding in *Woodson* is properly summarized by Blue Ridge as follows:

In other words, there is a spectrum of activities, some of which are never inherently dangerous, as a matter of law, and some of which are always inherently dangerous, as a matter of law.

Mindful of our responsibility to follow Supreme Court decisions "until otherwise ordered" by that court, *Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993), we therefore examine "the [instant] attendant circumstances," *Woodson*, 329 N.C. at 353, 407 S.E.2d at 236, so as to determine their appropriate location on the spectrum. In doing so, we find ourselves unpersuaded that those circumstances fall squarely at either end of the spectrum.

**LILLEY v. BLUE RIDGE ELECTRIC MEMBERSHIP CORP.**

[133 N.C. App. 256 (1999)]

At the outset, we must observe that setting utility poles forty-five to fifty feet in length and weighing approximately one ton on a "rugged mountain terrain" described as "straight up and down," making it "difficult to stand or walk," strikes us, at a minimum, as presenting a factual question of whether "there is a recognizable and substantial danger inherent in the work." *Woodson,* 329 N.C. at 351, 407 S.E.2d at 235. Blue Ridge responds by pointing to decisions from our courts holding that neither construction work, *see Vogh v. Geer,* 171 N.C. 672, 676, 88 S.E. 874, 876 (1916), nor working on a steep roof, *see Canady v. McLeod,* 116 N.C. App. 82, 88, 446 S.E.2d 879, 883, *disc. review denied,* 338 N.C. 308, 451 S.E.2d 632 (1994), were inherently dangerous, and by asserting that setting utility poles consequently may not be characterized as inherently dangerous. Under the facts *sub judice,* we disagree and simply note that neither cited case takes into account the combination of the size and weight of the utility poles and treacherous terrain present herein.

Plaintiff also tendered affidavits of two expert witnesses who described the work being engaged in by plaintiff as inherently dangerous and who stated that the "[i]nherent dangers associated with [the] work could have been substantially eliminated had proper and adequate procedures and safety precautions been utilized." *Cf. Woodson,* 329 N.C. at 351, 407 S.E.2d at 235 ("inherently dangerous activities are susceptible to effective risk control through the use of adequate safety precautions"). Further, plaintiff offered testimony from Blue Ridge and Pike employees tending to show that the safety of line work was dependent upon certain precautions being taken. In addition, plaintiff tendered Pike's "New Employees Safety Training Meeting sheet" which stated, "Construction work is dangerous." Finally, plaintiff produced Pike's OSHA 200 forms for the years 1992-1996, wherein Pike supplied the Department of Labor a summary of Pike's work-related injuries. While Blue Ridge takes issue with this evidence, we conclude that, taken in the light most favorable to plaintiff, plaintiff's forecast of evidence was sufficient to establish a genuine issue of material fact as to whether the activity engaged in by plaintiff was inherently dangerous.

We find unpersuasive the assertion by Blue Ridge that *Simmons,* 128 N.C. App. 402, 496 S.E.2d 790, *Canady,* 116 N.C. App. 82, 446 S.E.2d 879, and *Hooper,* 112 N.C. App. 400, 436 S.E.2d 145, support the determination that the activity engaged in by plaintiff was not inherently dangerous as a matter of law. Each case is distinguishable.

LILLEY v. BLUE RIDGE ELECTRIC MEMBERSHIP CORP.

[133 N.C. App. 256 (1999)]

In *Simmons,* for example, this Court held the work in question *was* inherently dangerous as a matter of law. Moreover, the case relied upon in *Simmons* for its pronouncement that whether an activity is inherently or intrinsically dangerous is a question of law, *Dietz v. Jackson,* 57 N.C. App. 275, 280, 291 S.E.2d 282, 286 (1982), was a decision of this Court decided prior to *Woodson. Canady* may be distinguished in that the focus of the opinion was upon the failure of the evidentiary forecast "to qualify [the roofing activity] as an inherently dangerous activity." *Canady,* 116 N.C. App. at 88, 446 S.E.2d at 883. Finally, while scaffolding constructed in conjunction with a plumbing job was held not to be inherently dangerous in *Hooper,* 112 N.C. App. at 406, 436 S.E.2d at 149, erecting large utility poles on a precipitously steep mountainside indisputably constitutes a different circumstance.

Blue Ridge also maintains that "plaintiff's injuries were caused by an act totally collateral to the construction work on the Project." Plaintiff's injuries, the argument continues, were caused by the rebound of a "dangerously situated rock bar," use of which was not specifically set out in the construction contract, and which was caused by "the collateral act of using a rock bar to guide the rope."

Blue Ridge relies upon *Hooper* to sustain the foregoing argument, noting this Court therein held use of scaffolding by the plaintiff plumber was an act "purely collateral to the work and which ar[ose] entirely from the wrongful act of the independent contractor or his employees," thereby precluding liability on the part of defendant general contractor. *Hooper,* 112 N.C. App. at 406, 436 S.E.2d at 149. However, in *Hooper,* the underlying activity, plumbing, was determined to be not inherently dangerous as a matter of law. It would be incongruous to hold a general contractor liable for an injury resulting from an act collateral to work which was not inherently dangerous. In the instant case, however, there is a genuine issue of material fact as to whether the activity was inherently dangerous.

Blue Ridge insists, however, that because "Blue Ridge did not instruct Pike on how to do the work" and "[t]he contract did not describe or establish how the work was to be done," it cannot be held liable. This argument is unavailing and contradicts the public policy behind this well-settled exception to the general rule:

Imposition of this nondelegable duty of safety reflects "the policy judgment that certain obligations are of such importance that employers should not be able to escape liability merely by hiring

others to perform them." . . . By holding both an employer and its independent contractor responsible for injuries that may result from inherently dangerous activities, there is a greater likelihood that the safety precaution necessary to substantially eliminate the danger will be followed.

*Woodson*, 329 N.C. at 352-53, 407 S.E.2d at 235 (citations omitted).

Finally, Blue Ridge argues that were we to hold, as we have, that there is a genuine issue of material fact as to whether plaintiff's activity was inherently dangerous, summary judgment was nevertheless appropriately granted because plaintiff failed to show Blue Ridge had knowledge of the circumstances creating the danger. *See Dunleavy*, 114 N.C. App. at 202, 442 S.E.2d at 56. Again we disagree.

Blue Ridge focuses upon its knowledge of use of the rock bar, as opposed to its knowledge of setting poles on steep terrain, such as Lost Ridge, and relies upon *Dunleavy*, 114 N.C. App. 196, 442 S.E.2d 53. In *Dunleavy*, the general contractor "did not know that [the independent contractor] . . . had commenced its work at the site." *Id.* at 203, 442 S.E.2d at 56.

By contrast, plaintiff's evidence at the hearing conducted below tended to show the following: Blue Ridge planned the project and designed its power line to run over the steep and difficult terrain of Lost Ridge. Given its knowledge of the topography, Blue Ridge is chargeable for purposes of summary judgment with an awareness based upon experience and common sense that the ability of workers installing utility poles to stand and use their regular equipment at Lost Ridge would, at a minimum, be significantly challenged. Moreover, Gerald Huffman, a Field Construction Supervisor with Blue Ridge, testified he had visited the Lost Ridge work site when winching activity was taking place the morning of the accident because the crews were "scattered out." At least one other Blue Ridge employee testified he "would have known [the] status of [the Pike crew] more than likely whatever day it was." Taking this evidence in the light most favorable to plaintiff, *see Kennedy*, 115 N.C. App. at 583, 448 S.E.2d at 281, we believe it sufficiently forecast knowledge on the part of Blue Ridge so as to survive summary judgment.

Reversed.

Judges McGEE and HORTON concur.