CHARLES LESTER THORPE AND MARY LOUISE THORPE, ADMINISTRATORS OF THE ESTATE OF CHARLES LEAMON THORPE, PLAINTIFFS V. TJM OCEAN ISLE PARTNERS LLC; COASTAL STRUCTURES CORPORATION; COASTAL CAROLINA CONSTRUCTION AND DEVELOPMENT INC.; UNIDENTIFIED VESSEL, DEFENDANTS

No. COA12-99

(Filed 7 August 2012)

**Wrongful Death—inherently dangerous activity—contributory negligence barred claim—admiralty**

> The trial court did not err in a wrongful death case by granting summary judgment in favor of all defendants. While the facts presented some indicia of inherently dangerous activity including the combination of construction work, water, and electricity, the issue of defendants' duty of care was not reached based on plaintiffs' claims being barred as a matter of law under the doctrine of contributory negligence. The doctrine of contributory negligence applied regardless of whether plaintiffs could have brought their claims in federal court as an admiralty case.

Appeal by Plaintiffs from order entered 28 September 2011 by Judge Robert F. Floyd in Brunswick County Superior Court. Heard in the Court of Appeals 5 June 2012.

> *Hodges & Coxe, PC, by Bradley A. Coxe, for Plaintiff-appellants.*

> *Crossley McIntosh Collier Hanley & Edes, PLLC, by Justin K. Humphries and Andrew J. Hanley, for Defendant-appellee TJM Ocean Isle Partners LLC.*

> *Cranfill Sumner & Hartzog LLP, by Colleen N. Shea, Melody J. Jolly, and Carolyn C. Pratt, for Defendant-appellee Coastal Structures Corporation.*

> *Williams Mullen, by Rebecca A. Scherrer and H. Mark Hamlet, for Defendant-appellee Coastal Carolina Construction and Development, Inc.*

HUNTER, JR., Robert N., Judge.

This is a wrongful death action arising from the electrocution of Charles Leamon Thorpe ("Thorpe") while he was building a pier in Ocean Isle Beach, North Carolina. The administrators of Thorpe's

estate, Charles Lester Thorpe and Mary Louise Thorpe ("Plaintiffs"), appeal from the trial court's order granting summary judgment in favor of all defendants. We affirm.

## I. Factual & Procedural Background

In late 2006, Defendant TJM Ocean Isle Partners LLC ("TJM") purchased the Pelican Point Marina in Ocean Isle Beach, with the intent to refurbish and expand the marina facilities and to reopen the marina as the Ocean Isle Marina & Yacht Club ("Ocean Isle"). Part of the expansion plan consisted of adding floating docks to the marina. Access to one of these docks required installation of a ramp, which would run from the end of a newly built wooden pier down to the dock below. TJM retained Defendant Coastal Structures Corporation ("Coastal Structures") to build the pier and install the ramp, and Coastal Structures, in turn, subcontracted with Coastal Carolina Construction and Development, Inc. ("Coastal Carolina") to build the pier.

During the week of 13 June 2008, Coastal Structures informed Coastal Carolina's owner, Jeremy Ridenhour ("Ridenhour"), that the pier needed to be built by the end of the week. TJM was eager to provide dock access to its customers at Ocean Isle during the summer boating season. Ridenhour was busy with another project, however, so he referred Coastal Structures to his longtime friend, Charles Leamon Thorpe ("Thorpe") d/b/a Buck's Construction.

Thorpe arrived at Ocean Isle on the morning of 13 June 2008 with four employees.[1] When Thorpe's employees inquired where they could obtain power for their tools, they were told[2] to use an outlet in the Sailfish Building, one of the marina's two boat storage buildings. One of Thorpe's employees went to plug an extension cord into the outlet and observed there was no Ground Fault Circuit Interrupter ("GFCI") protection. Another member of Thorpe's crew confirmed the outlet was not GFCI protected and reported this to Thorpe. Thorpe responded by telling his crew to "get to work."

That afternoon, Thorpe decided cross-braces needed to be installed between two of the pier's wooden uprights. Thorpe asked one of his crew to install the cross-braces, but the crewman refused, citing the dangers of drilling so close to the water. Thorpe himself

---

1. Coastal Structures and Coastal Carolina dispute who actually contracted with Thorpe to perform the work at the marina.

2. It is unclear from the record whether an employee of TJM or of Coastal Structures told Thorpe's employees where to obtain power for their tools.

began the task, which required predrilling pilot holes into the wooden uprights. The lower holes were in close proximity to the water line, requiring Thorpe to sit on the edge of the floating dock with his legs dangling inches above the water. Recognizing the danger of the situation, one of Thorpe's employees urged Thorpe to hold off on the work until the next morning when the tide would be lower. Another worker observed Thorpe working and warned him "he couldn't be more dangerous if he was standing in the water."

Plaintiffs allege that a few minutes later, while Thorpe was drilling the lower holes, a twenty-six-foot Bayliner boat passed by the marina at an excessive rate of speed,[3] causing a large wake. The wake washed over the drill in Thorpe's hands, subjecting Thorpe to an electric shock. Because the drill was not connected to a GFCI-protected outlet, the power to the drill did not automatically shut off. The continuing shock contracted Thorpe's muscles, freezing his grip on the drill and pulling him into the water. From the water, Thorpe yelled "unplug me." One of Thorpe's crew unplugged the drill and pulled him out of the water. Thorpe was administered CPR and transported to Brunswick Community Hospital, where he was pronounced dead at 3:32 p.m. The official cause of death was described as electrocution caused by an electric drill coming into contact with the water.

On 10 March 2010, Plaintiffs filed a complaint in Brunswick County Superior Court, alleging claims of negligence and wrongful death and naming TJM, Coastal Structures, and Coastal Carolina (together, "Defendants") as defendants. Plaintiffs' complaint additionally named an Unidentified Vessel (the boat that allegedly caused the wake) as a defendant, but this vessel was never identified and consequently was never a party to Plaintiffs' suit. Plaintiffs' complaint originally cited the saving-to-suitors clause in 28 U.S.C. § 1333[4] as the source of the trial court's jurisdiction over their claims. Pursuant to an order entered 11 June 2010, Plaintiffs amended their complaint to include N.C. Gen. Stat. § 7A-240 as an alternative source of the trial court's jurisdiction.

---

3. Plaintiffs claim the boat's speed was excessive in light of the no-wake signs flanking either side of the marina.

4. "The [federal] district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1) (2006). The saving-to-suitors clause "allows state courts to entertain *in personam* maritime causes of action," subject to the condition that any remedy provided be consistent with federal maritime standards. *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222–23 (1986).

Each defendant timely filed an answer, denying liability on all claims. Each defendant also filed cross-claims against the other defendants for indemnification and contribution. In addition, Defendant Coastal Carolina filed third-party claims for indemnification and contribution against Charles Lester Thorpe, Thorpe's father and one of the administrators of Thorpe's estate, for allegedly providing the drill that contributed to Thorpe's death.

Following discovery, each defendant moved for summary judgment on all claims. At or about this time, the Guardian Ad Litem representing Thorpe's minor son moved to intervene in the case pursuant to N.C. Gen. Stat. § 1A-1, Rule 24. These matters came on for hearing in Brunswick County Superior Court on 27 September 2011, Judge Robert F. Floyd presiding. By order entered 28 September 2011, the trial court granted summary judgment in favor of all defendants on all claims. The order dismissed without prejudice the Guardian Ad Litem's motion to intervene, Defendants' cross-claims, and Coastal Carolina's third-party claim as moot. Plaintiffs timely filed notice of appeal with this Court on 5 October 2011.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2011), as Plaintiffs appeal from a final order of the superior court as a matter of right.

## III. Analysis

Plaintiffs contend the trial court erred in granting Defendants' motions for summary judgment on all claims. We disagree, and we affirm the trial court's ruling.

"This Court reviews orders granting summary judgment de novo." *Foster v. Crandell*, 181 N.C. App. 152, 164, 638 S.E.2d 526, 535 (2007). When moving for summary judgment, the movant has the burden to show "(1) an essential element of the non-movant's claim is nonexistent, (2) the non-movant cannot produce evidence to support an essential element of his claim, or (3) the non-movant cannot surmount an affirmative defense which would bar his claim." *Taylor v. Ashburn*, 112 N.C. App. 604, 606-07, 436 S.E.2d 276, 278 (1993). "Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Lilley v. Blue Ridge Elec. Membership Corp.*, 133 N.C. App. 256, 258, 515 S.E.2d 483, 485 (1999). "A court

ruling upon a motion for summary judgment must view all the evidence in the light most favorable to the non-movant, accepting all its asserted facts as true, and drawing all reasonable inferences in its favor." *Id.*

Plaintiffs contend the trial court erred in granting Defendants' motions for summary judgment because Defendants violated their nondelegable duty of care to provide a safe workplace. Plaintiffs recognize the general rule that neither a general contractor nor a landowner who hires a general contractor owes a duty to a subcontractor's employees, *see Woodson v. Rowland*, 329 N.C. 330, 350, 407 S.E.2d 222, 234 (1991), but argue this case falls within an exception to the general rule because the subcontracted work was inherently dangerous, *see id.* at 356, 407 S.E.2d at 238 (recognizing the "inherently dangerous" exception). In the alternative, Plaintiffs argue Defendants violated their duty of ordinary care to Thorpe under a theory of common law premises liability. While we note that the facts in the instant case present some indicia of inherently dangerous activity—for instance, the combination of construction work, water, and electricity—we need not reach the issue of Defendants' duty of care, as we hold Plaintiffs' claims are barred as a matter of law under the doctrine of contributory negligence.

Plaintiffs contend this is an admiralty case requiring application of comparative negligence, not contributory negligence. We conclude the doctrine of contributory negligence applies regardless of whether Plaintiffs could have brought their claims in federal court as an admiralty case.

Under North Carolina law, a plaintiff is completely barred from recovering for any injury proximately caused by the plaintiff's contributory negligence. *Sawyer v. Food Lion, Inc.*, 144 N.C. App. 398, 401, 549 S.E.2d 867, 869 (2001). Federal admiralty law, on the other hand, applies the doctrine of comparative negligence, according to which a plaintiff's negligence reduces the plaintiff's recovery in direct proportion to the plaintiff's fault. *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (1953). But an admiralty court does not necessarily apply federal law to every claim before it. *See, e.g., Western Fuel Co. v. Garcia*, 257 U.S. 233, 243–44 (1921) (applying the state law statute of limitations to a wrongful death claim brought in federal district court under admiralty jurisdiction). Instead, an admiralty court applies the substantive law of whatever source of law provides the right to recover. *Byrd v. Napoleon Ave. Ferry Co.*, 125 F. Supp. 573, 578 (E.D. La. 1954), *aff'd*, 227 F.2d 958 (5th Cir. 1955) (per curiam).

Where admiralty law provides the right to recover, a court, whether state or federal, must apply federal admiralty law, with some room to apply state law if it does not conflict with core admiralty principles. *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 243–44 (1942). This is true whether the remedy for that right is state-created or federal. *Pope & Talbot*, 346 U.S. at 409. Conversely, "admiralty courts, when invoked to protect rights rooted in state law, endeavor to determine the issues in accordance with the substantive law of the State." *Garrett*, 317 U.S. at 245. Specifically, "when admiralty adopts a State's right of action for wrongful death, it must enforce the right as an integrated whole, with whatever conditions and limitations the creating State has attached." The *M/V Tungus v. Skovgaard*, 358 U.S. 588, 592 (1959).

*Byrd* illustrates how an admiralty court applies different legal standards depending on the source of the right to recover. In *Byrd*, a husband and wife were disembarking from a river ferry in their car when the husband lost control and drove the car into the river. 125 F. Supp. at 575-76. The husband died, and the wife sustained injuries but survived. *Id.* at 576. The trial court found both the husband's and the ferry operator's negligence contributed to the accident. *Id.* at 579. At the time, federal admiralty law did not recognize a right to recover for wrongful death, so the wrongful death claim for the husband was raised under state law. *Id.* at 577. On the other hand, admiralty law did recognize a right to recover for nonfatal injuries caused by maritime negligence, so the right to recover for the wife's injuries arose under federal admiralty law. *Id.* The difference in the source of the right to recover was important because, as in the instant case, the applicable state law recognized contributory negligence as a complete bar to recovery, whereas federal admiralty law applied the doctrine of comparative negligence. *Id.* at 576-77. Because the right to recover for the husband's death arose from state law, state law dictated that his contributory negligence completely barred any recovery for his death. *Id.* at 579. Contrarily, as the right to recover for the wife's injuries arose from federal law, comparative negligence applied, and any negligence on her part reduced, but did not necessarily eliminate, recovery for her injuries. *Id.*

Applying *Byrd's* analysis here, we conclude that the claims against Defendants are rooted in North Carolina law and Defendants can therefore raise contributory negligence as a bar to Plaintiffs' claims. Plaintiffs' complaint asserts N.C. Gen. Stat. § 28A-18-2, North Carolina's wrongful death statute, as the source for their right to

recover. This statute allows Plaintiffs, as administrators of Thorpe's estate, to bring a tort claim against Defendants, subject to the same conditions as would have applied to a claim brought by Thorpe himself, had he survived. *See* N.C. Gen. Stat. § 28A-18-2 (2011). Because Plaintiffs are relying on North Carolina's wrongful death statute to recover, the substantive law of North Carolina, including the doctrine of contributory negligence, applies.

This is true even though Plaintiffs' complaint additionally asserts "a wrongful death claim under general maritime law" because such a claim is unavailable against Defendants. The right to recover recognized under federal admiralty law is restricted to "an action . . . for death caused by violation of *maritime duties.*" *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 409 (1970) (emphasis added); *see also Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 820 (2001) ("The maritime cause of action that *Moragne* established for unseaworthiness is equally available for negligence."). But Plaintiffs are not claiming Defendants violated any maritime duties. Instead, Plaintiffs' allegations against Defendants are for violations of duties imposed by North Carolina law. Notably, every argument Plaintiffs raise about whether Defendants owed Thorpe a duty of care cites North Carolina case law, North Carolina statutes, or North Carolina regulations. Because the allegations against Defendants are for violations of nonmaritime duties imposed by state law, Plaintiffs cannot bring a wrongful death claim based in admiralty against Defendants.[5] This leaves N.C. Gen. Stat. § 28A-18-2 as the source for Plaintiffs' right to recover, and consequently, North Carolina law determines Defendants' available defenses, which include Thorpe's contributory negligence.

Having established that the doctrine of contributory negligence applies regardless of whether or not this case would have qualified for federal admiralty jurisdiction, we turn to the issue of whether Thorpe's conduct in the instant case bars Plaintiffs' recovery as a matter of law. As previously stated, under North Carolina law, a defendant can raise the plaintiff's contributory negligence as an affirmative defense to bar the plaintiff's claim in its entirety. *Sawyer*, 144 N.C. App. at 401, 549 S.E.2d at 869. To prove a plaintiff's contributory

---

5. Had Plaintiffs identified and served the boat that they allege caused the wake, they would have had the option to bring a *Moragne*-type claim or a claim under N.C. Gen. Stat. § 28A-18-2 *against the boat. See Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 215–16 (1996) (holding that the admiralty wrongful death claim recognized in *Moragne* did not preempt the availability of a state wrongful death claim).

negligence, the defendant must demonstrate (1) that the plaintiff failed to act with due care and (2) such failure proximately caused the injury. *Shelton v. Steelcase*, 197 N.C. App. 404, 424, 677 S.E.2d 485, 499 (2009). Where the plaintiff is injured by an unsafe condition, "[t]he doctrine of contributory negligence will preclude a defendant's liability if the [plaintiff] actually knew of the unsafe condition or if a hazard should have been obvious to a reasonable person." *Allsup v. McVille, Inc.*, 139 N.C. App. 415, 416, 533 S.E.2d 823, 824 (2000), *aff'd*, 353 N.C. 359, 543 S.E.2d 476 (2001) (per curiam). Because a reasonable care standard is used to determine a plaintiff's negligence, the question of contributory negligence is ordinarily one for the jury. *Sawyer*, 144 N.C. App. at 401, 549 S.E.2d at 869–70. However, " '[w]here the evidence is uncontroverted that a party failed to use ordinary care and that want of ordinary care was at least one of the proximate causes of the injury,' summary judgment is appropriate." *Id.* at 401, 549 S.E.2d at 870 (citation omitted).

Here, the evidence is uncontroverted that Thorpe was aware that the drill he was using was plugged into an outlet that lacked GFCI protection. Thorpe was alerted to this fact but responded simply by telling his employees to "get to work." At least two people warned Thorpe about the danger he was exposing himself to by drilling so close to the surface of the water. One of his employees suggested that he come back in morning, when the tide was low. Another worker noticed Thorpe sitting on the deck and warned him about the danger.

Plaintiffs argue that Thorpe was not negligent because he could *assume* the electrical outlet he was using was GFCI protected, as required by the North Carolina Electrical Code. *See* N.C. Electrical Code §§ 555.19(B)(1), 590.6(A) (2008) (requiring GFCI protection on electrical receptacles in boathouses and when a receptacle is temporarily used for construction). For this proposition, Plaintiffs cite *Shelton*, where this Court held that " 'one is not required to anticipate the negligence of others; *in the absence of anything which gives or should give notice to the contrary*, one is entitled to assume and to act on the assumption that others will exercise ordinary care for their own or others' safety.' " 197 N.C. App. at 425, 677 S.E.2d at 500 (emphasis added) (quoting *Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 469, 279 S.E.2d 559, 563 (1981)). Plaintiffs' reliance on *Shelton* is misplaced because *Shelton* speaks in terms of an assumption in the absence of notice. Thorpe was aware the outlet he was using had no GFCI protection. Once he was aware of that, he could no longer assume there was GFCI protection because the North Carolina Electrical Code or any other regulations required it.

We note that this Court's ruling in *Sawyer* supports our conclusion. In *Sawyer*, the plaintiff was installing acoustic ceiling tiles in a grocery store when the wheels of the rolling scaffolding he was standing on slipped into an open hole in the floor, causing the scaffold to collapse and throwing him to the ground. 144 N.C. App. at 400, 549 S.E.2d at 869. The hole was one of many left open by another independent contractor on site. *Id.* Before his fall, the plaintiff noticed the holes and talked to the general contractor's supervisor about them. *Id.* The plaintiff even attempted to cover the holes, but when he was unable to find anything to use as a cover, he went forward installing the tiles, with the wheels of his scaffolding unlocked and mere inches from a hole. *Id.* at 400, 549 S.E.2d at 869. The plaintiff argued that the independent contractor violated OSHA regulations by leaving the holes uncovered. *Id.* at 400–01, 549 S.E.2d at 869. Although this Court agreed with the plaintiff that the independent contractor may have violated OSHA regulations, thereby providing sufficient evidence to survive summary judgment on the issue of the independent contractor's negligence, we nevertheless held the plaintiff's contributory negligence could be determined as a matter of law, and his claims were barred. *Id.* at 401-02, 549 S.E.2d at 869–70.

Like the plaintiff in *Sawyer*, Thorpe knew about the regulatory violations and the associated danger but proceeded with his work. We accordingly conclude that even if Defendants owed Thorpe a duty of care, Thorpe's contributory negligence barred Plaintiffs' claims as a matter of law. We hold the trial court did not err in granting Defendants' motions for summary judgment on all claims.

### IV. Conclusion

For the foregoing reasons, the trial court's order is

Affirmed.

Chief Judge Martin and Judge Elmore concur.