RACHEL DUNLEAVY AND JOHNNY GLENN COBB, ADMINISTRATORS OF THE ESTATE OF JOHNNY GLENN COBB II, DECEASED, PLAINTIFFS v. YATES CONSTRUCTION COMPANY, INC.; SPRINGFIELD PROPERTIES, INC.; ROBERT G. YATES; DOUGLAS B. YATES; AND DONALD BAYNES, DEFENDANTS

No. 9018SC333

(Filed 5 May 1992)

1. **Master and Servant § 87 (NCI3d) — Woodson v. Rowland — retroactivity**

   The decision in *Woodson v. Rowland*, 329 N.C. 330, will be applied retroactively by the Court of Appeals.

   **Am Jur 2d, Master and Servant § 139.**

2. **Master and Servant § 19 (NCI3d) — independent contractor's employee — death in trench cave-in — liability of landowner — nondelegable duty of care**

   In an action to recover for the death of an independent contractor's employee in a trench cave-in, plaintiffs' complaint was sufficient to state a claim against defendant landowner for breach of a nondelegable duty of care arising from an inherently dangerous activity where plaintiffs alleged that the landowner hired the independent contractor to perform an inherently dangerous activity, i.e., digging a trench without required shoring, bracing or other supportive devices; that defendant "had direct knowledge" of the circumstances creating the danger; and that defendant breached its duty to the employee and this breach was a proximate cause of plaintiffs' damages.

   **Am Jur 2d, Premises Liability § 457.**

3. **Master and Servant § 21 (NCI3d) — injury to independent contractor's employee — no liability for negligent selection or retention of contractor**

   North Carolina law does not recognize claims of an injured employee of an incompetent or unqualified independent contractor against a party for its negligent selection or retention of the independent contractor.

   **Am Jur 2d, Premises Liability § 457.**

4. **Master and Servant § 87 (NCI3d) — employee's death from trench cave-in — action against employer and officers — "substantial certainty" test — new summary judgment hearing**

   In an action to recover for the death of a corporate contractor's employee in a trench cave-in, the "substantial certainty" test set forth in *Woodson v. Rowland*, 329 N.C. 330, applies to the corporate employer. This standard also applies to the president and vice president of the corporate employer in their individual capacities if, at the time of the trenching, these corporate officers were acting in furtherance of the corporate business. Accordingly, plaintiffs are entitled to a new hearing on the summary judgment motions of the corporate employer and its two officers where the court's entry of summary judg-

ment for these defendants was based upon a misapprehension of the applicable law.

**Am Jur 2d, Master and Servant § 139.**

5. **Master and Servant § 89.1 (NCI3d) — employee's death in trench cave-in — liability of foreman as co-employee — willful, wanton or reckless negligence standard**

The potential liability of the foreman of an employee killed in a trench cave-in was as a co-employee and was governed by the willful, wanton and reckless negligence standard.

**Am Jur 2d, Master and Servant § 398.**

6. **Master and Servant § 89.1 (NCI3d) — employee's death in trench cave-in — summary judgment for foreman**

In an action to recover for an employee's death in a trench cave-in, defendant foreman's forecast of evidence was sufficient to show that his conduct was not willful, wanton and reckless, and summary judgment was properly entered for defendant where plaintiffs did not produce any evidence to refute defendant's evidence, and defendant's affidavit tended to show that he was the pipe crew foreman in charge of an inexperienced pipe crew of which the deceased employee was a member; during the afternoon the employee was killed, the crew was beginning the second leg of the trench work when the foreman was called away to another part of the work site; at this point the trench had not exceeded five feet, the depth at which trenches were required to be supported, and was not to exceed five feet during the second leg of the work; no one in the crew was working in any part of the trench that exceeded a depth of five feet; while the foreman was gone, however, the backhoe operator made more progress than had been expected and began digging the trench deeper than five feet; and the employee was killed some time later when a small portion of the trench where the depth exceeded five feet collapsed.

**Am Jur 2d, Master and Servant § 398.**

APPEAL by plaintiffs from judgment entered 8 November 1989 and order entered 9 November 1989 in GUILFORD County Superior Court by *Judge Howard R. Greeson, Jr.* Heard in the Court of

**DUNLEAVY v. YATES CONSTRUCTION CO.**

[106 N.C. App. 146 (1992)]

Appeals 16 November 1990. Heard in the Court of Appeals on remand from the Supreme Court on 18 March 1992.

*Smith, Patterson, Follin, Curtis, James, Harkavy & Lawrence, by Norman B. Smith and Bryan E. Lessley, and Smith, Follin & James, by J. David James, for plaintiff-appellants.*

*Henson Henson Bayliss & Sue, by Jack B. Bayliss, Jr., A. Robinson Hassell, and Daniel L. Deuterman, for defendant-appellees Yates Construction Company, Inc., Robert G. Yates, Douglas B. Yates and Donald Baynes.*

*Adams Kleemeier Hagan Hannah & Fouts, by J. Alexander S. Barrett and Edward L. Bleynat, Jr., for defendant-appellee Springfield Properties, Inc.*

GREENE, Judge.

Plaintiffs appeal from an order entered 8 November 1989 granting summary judgment for Yates Construction Company (Company), Robert Yates, Douglas Yates, and Donald Baynes (Baynes). Plaintiffs also appeal from an order entered 9 November 1989 dismissing the plaintiffs' complaint as to Springfield Properties (Springfield) for failure to state a claim upon which relief can be granted.

In October, 1985, Company, an independent contractor, contracted with Springfield to construct, among other things, sewer lines within the Raven Ridge Subdivision located in Guilford County, North Carolina. Springfield owned the property on which the subdivision was being built. At this time, Johnny Glenn Cobb, II (Cobb) worked for Company as a member of a "new and inexperienced pipe crew." Cobb had no prior experience on a pipe crew. On 17 October 1985, Cobb and the other members of the crew arrived with their equipment at the Raven Ridge work site to begin installing the sewer lines. Before 17 October 1985, the pipe crew had been digging trenches to lay water lines at a location different than the Raven Ridge work site. They did not begin any trench work that day because Baynes, the crew foreman, did not plan to make much progress with such a new and inexperienced crew.

On the morning of 18 October 1985, the pipe crew began the first leg of the trench work at the Raven Ridge work site. The soil at the work site was "firm and stable." At no time that morning did the depth of the trench exceed five feet. Douglas Yates, vice

president of Company, "requested that trench boxes owned by the company be transferred from another construction site for use during the progress of the construction work at the Raven Ridge subdivision . . . ." By the afternoon, the pipe crew had begun the second leg of the trench work. In the early stages of this second leg, the trench was not to exceed five feet in depth. Baynes was called away to another side of the project, and while he was gone, the operator of the backhoe made more progress than Baynes had expected. In fact, the operator of the backhoe was digging well ahead on the pipe laying crew. When Baynes left, the trench did not exceed five feet in depth. While Baynes was gone, however, the digging increased at such a rate that before Baynes could return to the trench, the trench exceeded five feet in depth in certain parts. According to Robert Yates, president of Company, "it was the policy of the Company to use trench boxes or slope the sides of a trench when conditions warranted such action, including whenever the depth of a trench exceeded five feet . . . ." It is undisputed that Occupational Safety and Health Act (OSHA) regulations in effect at the time required trenches of more than five feet in depth to be properly supported. This trench, however, was approximately 150 feet long, the walls of the trench were vertical and had not been shored, sloped, braced, or otherwise supported to prevent a collapse, and the trench boxes which Douglas Yates had requested had not yet arrived. While Cobb was in a portion of the trench where the depth exceeded five feet, a small portion of one side of the trench collapsed and struck Cobb in the head resulting in his death. Cobb, contrary to OSHA regulations, had not been provided a hard helmet and consequently was not wearing such protective equipment at the time of his death. Baynes was not present when the trench collapsed.

The plaintiffs, in addition to filing a claim for workers' compensation benefits, filed a complaint against Company, Robert Yates, Douglas Yates, Baynes, and Springfield. As to Company, Robert Yates, Douglas Yates, and Baynes, the plaintiffs alleged that Cobb's death was the result of a deliberate and intentional assault and willful, wanton, and reckless negligence. As against Springfield, the plaintiffs alleged that Springfield was liable to the plaintiffs on the theories of inherently dangerous activity, negligent selection of Company, and negligent retention of Company. On 17 July 1989, Springfield filed a motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) (Rule 12(b)(6) ). On 27 July 1989, the remaining defendants

DUNLEAVY v. YATES CONSTRUCTION CO.

[106 N.C. App. 146 (1992)]

jointly filed an answer, and on 18 August 1989, they filed a motion to dismiss under Rule 12(b)(6), and in the alternative, for summary judgment under N.C.G.S. § 1A-1, Rule 56 (Rule 56). On 26 October 1989, the plaintiffs made a motion to stay all proceedings pending the North Carolina Supreme Court's resolution of *Woodson v. Rowland*, 92 N.C. App. 38, 373 S.E.2d 674 (1988), *disc. rev. allowed*, 324 N.C. 117, 377 S.E.2d 247 (1989). On 8 November 1989, the trial court denied the plaintiffs' motion to stay and granted summary judgment for Company, Robert Yates, Douglas Yates, and Baynes. The next day, the trial court granted Springfield's motion to dismiss the plaintiffs' complaint. The plaintiffs appealed to this Court which, in an unpublished opinion, affirmed the trial court's orders based on *Woodson*, 92 N.C. App. 38, 373 S.E.2d 674. *Dunleavy v. Yates Constr. Co.*, 103 N.C. App. 804, 407 S.E.2d 905 (1991). The plaintiffs then petitioned the North Carolina Supreme Court for discretionary review of this Court's decision, and on 6 November 1991, the North Carolina Supreme Court allowed the plaintiffs' petition for discretionary review "for the limited purpose of entering the following order: the case is remanded to the Court of Appeals for reconsideration in light of" *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). *Dunleavy v. Yates Constr. Co.*, 330 N.C. 194, 412 S.E.2d 54 (1991).

---

The issues are whether (I) the North Carolina Supreme Court's decision in *Woodson* operates retroactively; (II) (A) the plaintiffs sufficiently alleged a cause of action for breach of the nondelegable duty of care arising from an alleged inherently dangerous activity, and (B) North Carolina law recognizes claims of an injured employee of an independent contractor for negligent selection and retention of the independent contractor; and (III) (A) this Court should remand the trial court's order of summary judgment for Company, Robert Yates, and Douglas Yates, and (B) Baynes' conduct towards Cobb was willful, wanton, and reckless.

I

[1] The plaintiffs argue, and Springfield disagrees, that this Court should apply the North Carolina Supreme Court's decision in *Woodson* retroactively to cases like this one arising before 14 August 1991, the date *Woodson* was filed.

Under the well-established judicial policy in North Carolina, decisions of the North Carolina Supreme Court "are generally

presumed to operate retroactively." *State v. Rivens*, 299 N.C. 385, 390, 261 S.E.2d 867, 870 (1980). Furthermore, decisions of the North Carolina Supreme Court overruling former decisions are also presumed to operate retroactively. *Cox v. Haworth*, 304 N.C. 571, 573, 284 S.E.2d 322, 324 (1981). These rules of judicial policy are based upon the " 'Blackstonian Doctrine' of judicial decision-making," *id.*, also known as the "declaratory theory of law," *James B. Beam Distilling Co. v. Georgia*, 501 U.S. ---, ---, 115 L.Ed.2d 481, 488 (1991), which provides that courts do not make the law, they merely discover and announce it. *Cox*, 304 N.C. at 573, 284 S.E.2d at 324. Compelling reasons must exist, however, before courts will apply an overruling decision of a court of supreme jurisdiction in a purely prospective manner. *Cox*, 304 N.C. at 573-74, 284 S.E.2d at 324; *Rivens*, 299 N.C. at 390, 261 S.E.2d at 870. We need not decide whether compelling reasons exist which would require a purely prospective application of *Woodson*. Although the *Woodson* Court was silent on whether its decision was to operate retroactively, the Court did not require its decision to operate purely prospectively. *See Rabon v. Rowan Mem. Hosp., Inc.*, 269 N.C. 1, 21, 152 S.E.2d 485, 499 (1967) (specifically requiring prospective application of holding). Furthermore, implicit in the North Carolina Supreme Court's order directing this Court to reconsider *Dunleavy* in light of *Woodson* is the directive that the *Woodson* decision apply retroactively, a directive that this Court has recently followed in *Cook v. Morrison*, 105 N.C. App. 509, 413 S.E.2d 922 (1992). Accordingly, this Court will continue to apply all aspects of the *Woodson* decision retroactively.

II

The plaintiffs argue that the trial court erred in granting Springfield's Rule 12(b)(6) motion to dismiss the plaintiffs' complaint for breach of the nondelegable duty of care arising from an inherently dangerous activity and for negligent selection and retention of Company.

(A) Nondelegable Duty

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint by presenting "the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory." *Lynn v. Overlook Dev.*, 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991). Under Rule 12(b)(6), a

**DUNLEAVY v. YATES CONSTRUCTION CO.**

[106 N.C. App. 146 (1992)]

plaintiff is required to allege sufficient facts in the complaint to support the substantive elements of the claim, otherwise, the complaint is subject to dismissal. *Metric Constructors, Inc. v. Industrial Risk Insurers*, 102 N.C. App. 59, 63, 401 S.E.2d 126, 128-29, *aff'd per curiam*, 330 N.C. 439, 410 S.E.2d 392 (1991); *see also Sutton v. Duke*, 277 N.C. 94, 104-05, 176 S.E.2d 161, 167 (1970) (under N.C.G.S. § 1A-1, Rule 8(a)(1), pleading must give sufficient notice of events or transactions which produced claim). When deciding a Rule 12(b)(6) motion, the court must read the complaint as a whole and view it "broadly and liberally in conformity with the mandate in [N.C.G.S. § 1A-1,] Rule 8(f)." 5A C. Wright & A. Miller, Federal Practice and Procedure § 1363 (2d ed. 1990); *Lynn*, 328 N.C. at 692, 403 S.E.2d at 471.

[2] Where a landowner hires an independent contractor to perform an inherently dangerous activity, and the owner knows or should know of the circumstances creating the danger, the owner "has the nondelegable duty to the independent contractor's employees 'to exercise due care to see that . . . [these employees are] provided a safe place in which to work and proper safeguards against any dangers as might be incident to the work [are taken].'" *Cook*, 105 N.C. App. at 517, 413 S.E.2d at 927 (quoting *Woodson*, 329 N.C. at 357, 407 S.E.2d at 238). Read as a whole and viewed liberally, the plaintiffs' complaint alleges sufficient facts to support the substantive elements of their claim against Springfield for breach of·this nondelegable duty. The plaintiffs alleged that Springfield hired Company, an independent contractor, to perform an inherently dangerous activity, i.e., digging a trench without required shoring, bracing, or other supportive devices, and that Springfield "had direct knowledge" of the circumstances creating the danger. Furthermore, the plaintiffs alleged that Springfield breached this duty and that the breach proximately caused their damages. Because the plaintiffs' allegations are sufficient to state a claim upon which relief can be granted, the trial court erred in granting Springfield's Rule 12(b)(6) motion on this cause of action.

### (B) Negligent Selection and Retention

[3] North Carolina law, however, does not currently recognize claims of an injured employee of an incompetent or unqualified independent contractor against a party for its negligent selection or retention of the independent contractor. *Cook*, 105 N.C. App. at 517-18, 413 S.E.2d at 927. Accordingly, because our law does

not recognize such claims, the trial court properly granted Springfield's Rule 12(b)(6) motion on the claims of negligent selection and retention of Company. *Lynn*, 328 N.C. at 692, 403 S.E.2d at 471.

## III

The plaintiffs argue that in light of *Woodson*'s new "substantial certainty" standard for potential civil liability of employers, this Court should remand this case to the trial court for a *de novo* hearing on the Rule 56 motions for summary judgment by Company, Robert Yates, Douglas Yates, and Baynes.

### (A) Company, Robert Yates, and Douglas Yates

**[4]** We agree that the "substantial certainty" standard applies to Company as Cobb's corporate employer. *Woodson*, 329 N.C. at 342-46, 407 S.E.2d at 229-32. This standard also applies to Robert Yates and Douglas Yates in their individual capacities if, at the time of the trenching, these corporate officers were "acting in furtherance of corporate business . . . ." *Id.* at 347-48, 407 S.E.2d at 232-33. Accordingly, the plaintiffs are entitled to a new hearing on the summary judgment motions of Company, Robert Yates, and Douglas Yates. This is true because "[w]here a ruling is based upon a misapprehension of the applicable law, the cause will be remanded in order that the matter may be considered in its true legal light." *Nationwide Mut. Ins. Co. v. Chantos*, 298 N.C. 246, 252, 258 S.E.2d 334, 338 (1979); *see also State v. McDowell*, 310 N.C. 61, 74, 310 S.E.2d 301, 310 (1984). Accordingly, we remand the trial court's order of summary judgment with regard to Company, Robert Yates, and Douglas Yates for a *de novo* hearing in light of *Woodson*.

### (B) Baynes

**[5]** Baynes, unlike the above-mentioned defendants, was not Cobb's "employer in person nor a person who is realistically the alter ego of the" Company, but was merely a foreman and as such was Cobb's co-employee. 2A A. Larson, The Law of Workmen's Compensation § 68.21 (1990) (drawing distinction between employers and supervisory employees such as foremen); *see Abernathy v. Consolidated Freightways Corp.*, 321 N.C. 236, 240-41, 362 S.E.2d 559, 561-62 (1987) (supervisor of injured employee classified as co-employee). The *Woodson* decision, therefore, does not entitle the plaintiffs to a *de novo* hearing with regard to Baynes whose poten-

DUNLEAVY v. YATES CONSTRUCTION CO.

[106 N.C. App. 146 (1992)]

tial liability to the plaintiffs as a co-employee of Cobb is governed by the "willful, wanton, and reckless negligence" standard of *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985). The *Pleasant* decision explained that although the Workers' Compensation Act (Act) bars an employee "who is injured in the course of his employment from suing a co-employee whose negligence caused the injury," *id.* at 713, 325 S.E.2d at 247, the Act does not bar such an employee from suing a co-employee for intentional torts. *Id.* Because the Act does not bar an employee from suing a co-employee for injuries caused by intentional torts, and because willful, wanton, and reckless negligence is "equated" with intentional injury for purposes of the Act, the Court concluded that the Act does not bar an employee from suing a co-employee for injuries caused by willful, wanton, and reckless negligence. *Id.* at 715, 325 S.E.2d at 248. The *Woodson* decision does not alter this standard for co-employee civil liability.

Because Baynes moved for summary judgment, Baynes had the burden of showing that (1) an essential element of the plaintiffs' claim did not exist, (2) the plaintiffs could not produce evidence to support an essential element of their claim, or (3) the plaintiffs could not surmount an affirmative defense which would bar their claim. *Clark v. Brown*, 99 N.C. App. 255, 260, 393 S.E.2d 134, 136-37, *disc. rev. denied*, 327 N.C. 426, 395 S.E.2d 675 (1990). Baynes submitted his affidavit which shows that an essential element of the plaintiffs' claim does not exist, namely, that Baynes' conduct was willful, wanton, and reckless.

[6] "Wanton" and "reckless" conduct is such conduct "manifesting a reckless disregard for the rights and safety of others." *Pleasant*, 312 N.C. at 714, 325 S.E.2d at 248. "Willful negligence" is "the intentional failure to carry out some duty imposed by law or contract which is necessary to the safety of the person or property to which it is owed." *Id.* Baynes' evidence tends to show that he was the pipe crew foreman in charge of an inexperienced pipe crew of which Cobb was a member. During the afternoon of 18 October 1985, the crew was beginning the second leg of the trench work when Baynes was called away to another part of the work site. At this point, the trench had not exceeded five feet in depth and was not to exceed five feet during the second leg of the work, and no one in the crew was working in any part of the trench that exceeded a depth of five feet. While Baynes was gone, however, the backhoe operator made more progress than had been expected and began digging the trench deeper than five feet. Some time

DUNLEAVY v. YATES CONSTRUCTION CO.

[106 N.C. App. 146 (1992)]

later, Cobb was killed when a small portion of the trench where the depth exceeded five feet collapsed. This evidence shows that Baynes' conduct, although arguably negligent, was not willful, wanton, and reckless. Baynes' conduct did not manifest reckless disregard for the rights and safety of the pipe crew, nor did it amount to the intentional failure to carry out a duty of care owed to the crew. *See Abernathy*, 321 N.C. at 241, 362 S.E.2d at 562 (dock worker injured by ordinary negligence of co-employees, one of whom was a supervisor). Because Baynes met his burden on his summary judgment motion, the burden shifted to the plaintiffs to refute Baynes' showing. *Cheek v. Poole*, 98 N.C. App. 158, 162, 390 S.E.2d 455, 458, *disc. rev. denied*, 327 N.C. 137, 394 S.E.2d 169 (1990). The plaintiffs did not produce any evidence in response to Baynes' affidavit. Accordingly, the trial court properly entered summary judgment for Baynes. *White v. Hunsinger*, 88 N.C. App. 382, 383, 363 S.E.2d 203, 204 (1988).

In summary, we affirm the trial court's order granting Springfield's motion to dismiss the plaintiffs' claims for negligent selection and retention. We also affirm the trial court's order granting Baynes' motion for summary judgment. We reverse and remand, however, the trial court's order granting Springfield's motion to dismiss the plaintiffs' claim for breach of a nondelegable duty, and we remand the trial court's order granting summary judgment for Company, Robert Yates, and Douglas Yates for a *de novo* hearing in light of *Woodson*.

Affirmed in part, reversed in part, and remanded.

Judges ORR and WALKER concur.