IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-744

Filed 02 May 2023

Catawba County, No. 21CVS937

ESTATE OF RODNEY BAKER, Plaintiff,

v.

DAVID W. REINHARDT and RANDY REINHARDT, Defendants.

Appeal by Defendant Randy Reinhardt from an order entered 14 July 2022 by Judge Alan Z. Thornburg in Catawba County Superior Court. Heard in the Court of Appeals 7 March 2023.

> *Patrick, Harper & Dixon, L.L.P., by David W. Hood, for Plaintiff-Appellee.*
>
> *Bailey & Dixon, LLP, by David S. Coats, David S. Wisz, and Devon H. Collins, for Defendant-Appellant Randy Reinhardt.*

RIGGS, Judge.

The central underlying facts of this case are not in dispute: Rodney Baker, a model employee of 24 years, died tragically in a workplace accident without any eyewitnesses. His surviving spouse sought and received full workers' compensation benefits from the Industrial Commission. Subsequent to the award, and in an understandable desire to speak for Mr. Baker and prevent future accidents, his estate ("Plaintiff") filed suit against Defendants David W. Reinhardt and Randy Reinhardt as co-employees for willful, wanton or reckless negligence under *Pleasant v. Johnson*,

312 N.C. 710, 325 S.E.2d 244 (1985). The Reinhardts moved to dismiss the complaint and for summary judgment for lack of subject matter jurisdiction under Rules 12(b)(1) and 56(b) of the North Carolina Rules of Civil Procedure. The trial court granted those motions as to David Reinhardt while denying them as to Randy Reinhardt. Randy Reinhardt appeals that order, arguing that the forecast of evidence presented at the hearing fails to show the requisite degree of negligence to establish a valid *Pleasant* claim. After careful review, and in light of binding precedents establishing a high bar applicable to *Pleasant* claims, we agree and reverse the trial court's denial of summary judgment as to Randy Reinhardt.

## I.  FACTUAL AND PROCEDURAL HISTORY

Dimension Wood Products, Inc., ("Dimension") is a closely-held wood furniture manufacturer based in Catawba County, North Carolina. David Reinhardt and Randy Reinhardt worked for Dimension as President and Plant/Operations Manager, respectively. Mr. Baker also worked for Dimension as a bandsaw operator, beginning in 1996. Mr. Baker was a model employee, was safety conscious, thought highly of David Reinhardt, and enjoyed his work. Other than complaining about the heat and limited bathroom breaks, Mr. Baker never expressed any safety concerns about the plant to friends or family.

Dimension's workplace was generally free from serious workplace safety incidents; aside from employees occasionally cutting their hands and fingers on the saws and a back injury suffered picking up a box, Dimension had no recorded work-

related injuries and illnesses for the years 2017 to 2019. The Occupational Safety and Health Division of the North Carolina Department of Labor ("OSHA") periodically inspected Dimension's woodworking plant, and issued no final orders for serious, repeat, or willful workplace safety violations during that timeframe. Dimension likewise maintained a Days Away, Restricted, or Transferred rate, or DART rate—indicative of serious workplace injuries—below the national average over the same period.

Employees participated in a machine guarding program to reduce the risk of injuries, and Dimension held "tool box talks" with its staff to discuss workplace hazards like cuts, slips, and trips. Workplace safety meetings were held on a quarterly basis, which included, *inter alia*, the following discussion topics:

> ALL GUARDS & SHIELDS MUST BE IN PROPER PLACE BEFORE RUNNING A MACHINE AND DURING OPERATION
>
> STAY CLEAR OF ALL MOVING PART[S] WHILE RUNNING A MACHINE
>
> . . . .
>
> MAKE SURE [THE] MACHINE COMES TO [A] COMPLETE STOP AND [IS] LOCKED OUT BEFORE MAKING ADJUSTMENTS, AND FOLLOW ALL LOCK OUT AND TAG OUT PROCEDURES
>
> BE SURE TO TURN MACHINES OFF AND MAKE SURE THEY COME TO A COMPLETE STOP BEFORE BENDING OVER AND CLEANING AROUND MACHINERY

During the meetings, employees were asked if they knew of any improperly placed machine guards or safety issues related to the machines on the plant floor. FFVA Mutual awarded Dimension a "Commitment to Safety Award" for its "effective and comprehensive workplace safety program" in 2019.

Mr. Baker was the sole operator of one of the bandsaws in use at the plant. Another bandsaw, in operation beginning in 2004, was located approximately 25 feet from Mr. Baker's ordinary workstation. That bandsaw was replaced by a substantially similar bandsaw in October 2018 (the "Machine"). Mr. Baker was trained to operate these bandsaws, but he was not their assigned or usual operator.

The Machine itself was used to create parts for chairs, sofa frames, and other pieces of furniture. It consists of two mechanically-linked motorized tables, situated atop one another, that move forward and backwards during operation. A table arm extends out from the rear of the Machine at a height of approximately three feet. When the Machine is running, the table arm travels horizontally and parallel to the floor at a speed of 0.82 feet per second, and its path terminates about four-to-five inches from a vertical steel beam that serves as a support pillar for the plant building. The Machine is capable of running without an operator present.

Dimension enclosed two sides of the rear of the Machine—where the table arm extends outwards—with fencing; however, the third side was open and ordinarily blocked only by movable barrels or work carts. Dimension received no safety complaints about the Machine or its predecessor from employees or from OSHA

representatives who had observed both bandsaws in operation. Indeed, OSHA did not cite Dimension for any safety violations related to the Machine or its prior during periodic inspections. Over the combined 15 years of the bandsaws' use, no injuries or accidents occurred as a result of their operation.

On 17 March 2020, Mr. Baker, without direction or instruction from anyone, was cleaning around the Machine when he stepped into the partially-enclosed area to its rear. Nearby employees heard a strange noise from the Machine before observing Mr. Baker laying on his back in a semi-conscious state. Co-workers then moved Mr. Baker and initiated CPR until emergency medical services could arrive. The area of the accident was not observable by any surveillance cameras, there were no eyewitnesses to the event, and the Reinhardts were both offsite at the time of the accident. Mr. Baker ultimately died of his injuries at the scene, which included contusions to his back and blunt force trauma and lacerations to his chest. Local police documented the incident, and the medical examiner's report surmised that Mr. Baker had been crushed between the Machine's table arm and the steel support beam.

OSHA arrived to investigate the accident the following day. Per its report—which includes redactions of all interviewed employees' names—Mr. Baker "was crushed between the [Machine's lower table arm] and a steel support structure on the side of the building, suffering trauma to his chest." One or more Dimension employees reported "that there are usually barrels in place to keep employees from

entering that area." The unknown employee(s) also said "[REDACTED] was aware of the machine guarding hazard," but only partial fencing had been installed because "most of the time they were too busy and there would have been buggy loads (carts with wood products) stacked in front of the machine and you would not be able to get in there." One or more employees also noted that "everyone in the plant knew they could not be back in the area of the machine where Mr. Baker was found when the machine was running." OSHA assessed Dimension with a "serious"[1] violation for failing to provide "one or more methods of machine guarding" that would have prevented the accident. Dimension remedied the violation during the inspection and installed an appropriate barrier gate.

Various members of Mr. Baker's family were permitted by Dimension and the Reinhardts to visit and observe the site of the accident after it occurred. During the course of these visits, the Reinhardts expressed bewilderment as to how the accident occurred; neither one believed Mr. Baker had been crushed between the pillar and the lower table arm, telling the family that he would have been cut in half had that happened given the small distance between the end of the lower table arm and the pole. The Reinhardts were likewise unsure how Mr. Baker, who was of adult height, suffered a chest wound from the lower table arm located three feet off the ground.

---

[1] Per OSHA, a "serious" violation occurs "if it is reasonably predictable that death or serious physical harm could result and . . . the employer knew, or should have known, of the hazard." This is distinct from a "willful" violation, "where the evidence shows either an intentional violation of the OSH Act of North Carolina or plain indifference to its requirements."

They also allowed Mr. Baker's family to observe the Machine in action, which one family member described as "slow moving." The Reinhardts explained to the family that the area had not been fenced off because they intended but had not yet been able to attach a conveyer belt to the rear of the Machine.

Mr. Baker's widow pursued and received a full award of workers' compensation benefits from the North Carolina Industrial Commission on 12 April 2022. Three days later, Mr. Baker's estate filed the instant suit against the Reinhardts. Per the complaint, Plaintiff's sole claim for relief is "for the cause of action outlined in *Pleasant v. Johnson*," which allows recovery for workplace accidents, independent of the Workers' Compensation Act's exclusivity provision, N.C. Gen. Stat. § 97-10.1 (2021), that arise out of the "willful, wanton and reckless negligence" of co-employees. *Pleasant*, 312 N.C. at 717, 325 S.E.2d at 250.

The Reinhardts moved to dismiss Plaintiff's complaint under Rule 12(b)(1) and for summary judgment under Rule 56(b), asserting that Plaintiff had failed to allege or forecast evidence establishing facts adequate to support a *Pleasant* claim. Both Reinhardts filed affidavits with exhibits in support of their summary judgment motion; the redacted OSHA report, medical examiner's report, and deposition transcripts from Mr. Baker's family members were likewise filed with the trial court. The trial court heard the Reinhardts' motions on 11 July 2022 and allowed the motions as to David Reinhardt; however, it denied both motions as to Randy

Reinhardt. Randy Reinhardt was served with the trial court's written order on 20 July 2022, and he filed a notice of appeal on 1 August 2022.

## II.   ANALYSIS

Randy Reinhardt contends, as he did below, that the trial court lacked subject matter jurisdiction over Plaintiff's claim because the forecast of evidence fails to establish an exception to the Workers' Compensation Act's exclusivity provision under *Pleasant*. Because this is an appeal from an interlocutory order, we first address our jurisdiction to hear the appeal before holding that the trial court erred in denying summary judgment as to Randy Reinhardt.

## A. Appellate Jurisdiction

Randy Reinhardt concedes that the order appealed is interlocutory, but asserts that an order denying a motion raising the exclusivity provision of the Workers' Compensation Act affects a substantial right authorizing immediate appellate review. *See Blue v. Mountaire Farms, Inc.*, 247 N.C. App. 489, 495, 786 S.E.2d 393, 397-98 (2016) (recognizing that there is generally no right to appeal an interlocutory order unless it affects a substantial right or is certified pursuant to N.C. R. Civ. P. 54(b)). Indeed, this Court has held that "the denial of a motion concerning the exclusivity provision of the Workers' Compensation Act affects a substantial right and thus is immediately appealable." *Fagundes v. Ammons Dev. Grp., Inc.*, 251 N.C. App. 735, 737, 796 S.E.2d 529, 532 (2017) (citing *Blue*, 247 N.C. App. at 495, 786 S.E.2d at 397-98). Because the trial court's denial of Randy Reinhardt's motions

under Rules 12(b)(1) and 56(b) both fall into this category, we have jurisdiction over this appeal. *See id.* (holding interlocutory order denying Rule 12(b)(1) and 56(b) motions raising the exclusivity provision of the Workers' Compensation Act affected a substantial right and was immediately appealable).

## B. Standard of Review

Denials of motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction are subject to *de novo* review where, as here, the trial court resolves the motion without findings of fact. *Munger v. State*, 202 N.C. App. 404, 410, 689 S.E.2d 230, 235 (2010). So, too, are denials of motions for summary judgment. *Blue*, 247 N.C. App. at 496, 786 S.E.2d at 398. Evidence outside the pleadings may be considered in both circumstances. *See id.* (recognizing that matters outside the pleadings may be consulted in ruling on a 12(b)(1) motion); N.C. R. Civ. P. 56(c) (2021) (providing that summary judgment motions are to be resolved based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any"). Under either motion, the record and evidence are to be construed in the light most favorable to the non-movant. *See United Daughters of the Confederacy v. City of Winston-Salem*, ___ N.C. ___, ___, 881 S.E.2d 32, 43 (2022) ("This Court . . . views the allegations as true and the supporting record in the light most favorable to the non-moving party, with this being the applicable standard of review . . . [if] the complaint is dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)." (cleaned up) (citations omitted)); *McCutcheon v.*

*McCutcheon*, 360 N.C. 280, 286, 624 S.E.2d 620, 625 (2006) (noting that summary judgment motions are resolved by taking the evidence "in a light most favorable to the non-moving party" (citation and quotation marks omitted)).

**C. *Pleasant* Claims and Willful, Wanton, and Reckless Negligence**

The Workers' Compensation Act ordinarily provides "the exclusive remedy in the event of [an] employee's injury by accident in connection with [their] employment[,] . . . [and] the injured employee may not elect to maintain a suit for recovery of damages for [their] injuries, but must proceed under the Act." *Reece v. Forga*, 138 N.C. App. 703, 705, 531 S.E.2d 881, 883 (2000) (citations omitted). This rule is one of subject matter jurisdiction, as "[s]uch cases are within the exclusive jurisdiction of the Industrial Commission; the superior court has been divested of jurisdiction by statute." *Id.* (citation omitted). It is not, however, absolute; in *Pleasant*, our Supreme Court held that an injured employee may sue a co-employee for workplace injuries caused by the latter's "willful, wanton and reckless negligence." 312 N.C. at 717, 325 S.E.2d at 250. In that case, the plaintiff was injured by a co-employee who was driving a truck "in such a fashion so as to see how close he could operate the [truck] to the plaintiff without actually striking him but, misjudging his ability to accomplish such a prank, actually struck the plaintiff with the [truck] he was operating." *Id.* at 711, 325 S.E.2d at 246.[2]

---

[2] An additional exception, first acknowledged in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), was not raised by the parties and is not at issue in this appeal.

The exception announced in *Pleasant* is based on a recognition that "wanton and reckless behavior may be equated with an intentional act," and therefore, "injury to another resulting from willful, wanton and reckless negligence [by a co-employee] should also be treated as an intentional injury" that falls outside the exclusive jurisdiction of the Industrial Commission. 312 N.C. at 715, 325 S.E.2d at 248. *Pleasant* defined reckless and wanton conduct "as an act manifesting a reckless disregard for the rights and safety of others." *Id.* at 714, 325 S.E.2d at 248 (citations omitted). "Willful negligence" was afforded a more complex definition:

> At first glance the phrase appears to be a contradiction in terms. The term "willful negligence" has been defined as the intentional failure to carry out some duty imposed by law or contract which is necessary to the safety of the person or property which it is owed. A breach of duty may be willful while the resulting injury is still negligent. Only when the injury is intentional does the concept of negligence cease to play a part. We have noted the distinction between the willfulness which refers to a breach of duty and the willfulness which refers to the injury. In the former only the negligence is willful, while in the latter the injury is intentional.
>
> Even in cases involving "willful injury," however, the intent to inflict injury need not be actual. Constructive intent to injure may also provide the mental state necessary for an intentional tort. Constructive intent to injure exists where conduct threatens the safety of others and is so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified. Wanton and reckless negligence gives rise to constructive intent.

*Id.* at 714-15, 325 S.E.2d at 248 (citations omitted). In short, the negligence exhibited must be so gross as to be "equivalent in spirit to actual intent," *Pender v. Lambert*, 225 N.C. App. 390, 396, 737 S.E.2d 778, 783 (2013) (citation omitted), and "*Pleasant* equated willful, wanton and reckless misconduct with intentional injury for Workers' Compensation purposes," *Woodson*, 329 N.C. at 339, 407 S.E.2d at 227.

Plaintiffs must clear a high bar in alleging and proving such a claim, as "[c]ases from [the Supreme] Court and the Court of Appeals indicate that the burden of proof is heavy on a plaintiff who seeks to recover under *Pleasant*." *Trivette v. Yount*, 366 N.C. 303, 310, 735 S.E.2d 306, 311 (2012). Mere negligence, even if conclusively established, does not suffice to establish a *Pleasant* claim, as "even unquestionably negligent behavior rarely meets the high standard of 'willful, wanton or reckless' negligence." *Id.* at 312, 735 S.E.2d at 312. This high bar is no less applicable to a non-movant plaintiff's claims at summary judgment. *Id.* at 312-13, 735 S.E.2d at 312-13. *Pleasant* claims that survive summary judgment are thus few and far between. *Id.* at 312, 735 S.E.2d at 312.

Several cases demonstrate this high standard. In *Echols v. Zarn, Inc.*, 116 N.C. App. 364, 448 S.E.2d 289 (1994), *abrogated on separate grounds by Mickles v. Duke Power Co.*, 342 N.C. 103, 110, 463 S.E.2d 206, 211 (1995), the injured plaintiff's hand was smashed by a plastic molding machine that she had never been trained to operate. 116 N.C. App. at 367-68, 448 S.E.2d at 291. Prior to the accident, a supervisory co-employee who knew of the machine's dangers and was responsible for

safety enforcement directed the plaintiff to reach her hand under the machine's safety gate while it was in operation to remove a part; when she did so, her hand got caught and crushed in the machine. *Id.* at 375, 448 S.E.2d at 295-96. The trial court dismissed the plaintiff's *Pleasant* claim at summary judgment and we affirmed, reasoning that "[e]ven if we assume that [the co-employee] knew that reaching under the safety gate could be dangerous, we do not believe this supports an inference that [the co-employee] intended that plaintiff be injured or that she was manifestly indifferent to the consequences of plaintiff reaching under the safety gate." *Id.* at 376, 448 S.E.2d at 296. In support of that analysis, we observed that the evidence indisputably showed that employees had reached under the safety gate without injury for over fifteen years. *Id.* Thus, while the co-employee's request to reach under the guard "might well be negligent, it does not rise to the level of conduct necessary to create personal liability over and above the Workers' Compensation Act." *Id.* at 377, 448 S.E.2d at 296.

Our Supreme Court reached a similar result in *Pendergrass v. Card Care, Inc.*, where a plaintiff's arm was caught in a final inspection machine. 333 N.C. 233, 236, 424 S.E.2d 391, 393 (1993). The plaintiff alleged gross and wanton negligence on the part of two co-employees who "direct[ed] [the plaintiff] to work at the final inspection machine when they knew that certain dangerous parts of the machine were unguarded, in violation of OSHA regulations and industry standards." *Id.* at 238, 424 S.E.2d at 394. Our Supreme Court held that no *Pleasant* claim arose under these

facts because, "[a]lthough they may have known certain dangerous parts of the machine were unguarded when they instructed [the plaintiff] to work at the machine, [the Supreme Court] [did] not believe this supports an inference that [the defendants] intended that [the plaintiff] be injured or that they were manifestly indifferent to the consequences of his doing so." *Id.*

This Court's decision in *Regan v. Amerimark Bldg. Prods., Inc.*, 127 N.C. App. 225, 489 S.E.2d 421 (1997), is likewise instructive. There, two supervisors required the plaintiff to manually clean a steel drum on a paint line machine with a piece of scrap metal while the line was operating. *Id.* at 226, 489 S.E.2d at 423. The machine was designed with a guard that obviated any need to manually clean the drum, but that part was missing on the day the plaintiff was working; in fact, three months prior, the plaintiff's employer had received a citation for a serious OSHA violation related to the lack of adequate machine guards on the line where the plaintiff worked. *Id.* Those violations had not been remedied on the date in question. *Id.* at 226-27, 489 S.E.2d at 423. As the plaintiff was cleaning the drum, his hand got caught and he was pulled into the machine; he attempted to hit two emergency cut-off switches, but both switches failed. *Id.* at 226, 489 S.E.2d at 423. The plaintiff suffered "severe and disabling injuries" as a result. *Id.* We affirmed the trial court's grant of summary judgment against the plaintiff on his *Pleasant* claim because:

> even though the evidence here shows that both
> [supervisors] were aware that the coater was unguarded
> and required plaintiff to manually clean the coater, there

> was no evidence from which a trier of fact could conclude that [the supervisors] engaged in conduct that was willful, wanton or reckless or that they were manifestly indifferent to the consequences of requiring plaintiff to manually scrape the coater.

*Id.* at 229, 489 S.E.2d at 424-25.

This Court recently considered and rejected a *Pleasant* claim in *Fagundes*. The plaintiff in that case was employed as a blaster at a rock-crushing company and was seriously injured when struck by blast debris. 251 N.C. App. at 737, 796 S.E.2d at 531. OSHA investigated the accident, found the plaintiff's supervisor at fault, and assessed five citations for "egregious" safety violations stemming from the blast. *Id.* at 740, 796 S.E.2d at 534. The plaintiff sued his supervisor, relying on the five OSHA violations to establish willful, wanton, and reckless negligence under *Pleasant*. *Id.* We held that this evidence was insufficient to establish such a claim at summary judgment because, "before his accident, neither [the supervisor] nor the company had ever been cited for any OSHA violations, nor had anyone been injured as a result of the company's blasting activities." *Id.* at 740, 796 S.E.2d at 534.

The high standard is no less applicable in cases involving workplace deaths. In *Dunleavy v. Yates Const. Co., Inc.*, a construction worker in a trench was killed when a portion of the trench collapsed on his head. 106 N.C. App. 146, 150, 416 S.E.2d 193, 195 (1992). The worker and the rest of his crew had no prior experience on the job, were not issued hardhats as required by OSHA, and the trench was not adequately supported under OSHA regulations. *Id.* at 149-50, 416 S.E.2d at 195.

While the employee's supervisor was away from the trench, it collapsed and killed the worker. *Id.* We held that summary judgment against the estate's *Pleasant* claim was proper because the trench only reached a dangerous depth while the supervisor was not present, and the failure to issue a hardhat required by OSHA or supervise the inexperienced crew, "although arguably negligent, was not willful, wanton, and reckless . . . [and] did not manifest reckless disregard for the rights and safety of the . . . crew." *Id.* at 155-56, 416 S.E.2d at 198-99.

*Estate of Vaughn v. Pike Elec., LLC*, 230 N.C. App. 485, 751 S.E.2d 227 (2013), presents the rare case of a successful *Pleasant* claim, and the remarkably egregious facts demonstrate why. There, the decedent had been working for less than two months as a groundman for an electrical crew that serviced overhead powerlines. *Id.* at 486-87, 751 S.E.2d at 229. Groundmen, unlike linemen, were prohibited from working on poles with energized powerlines. *Id.* The decedent's supervisor knew about this prohibition, the decedent's lack of training, and the risk of death posed by working energized powerlines, and yet he instructed the decedent to climb a pole, de-energize the pole, and start retrofitting a transformer. *Id.* at 487-88, 751 S.E.2d at 229-30. The decedent died during the process; at the time of the accident, his employer had received at least ten prior serious OSHA safety violations after other employees had been killed or injured working on powerlines. *Id.* at 488-89, 751 S.E.2d at 230. We held that these facts successfully established a *Pleasant* claim:

> [The] [d]efendant . . . knowingly directed [the] [d]ecedent, an untrained groundman who had previously worked as a truck driver, to climb a power pole and work on highly dangerous and "near energized" power lines, without the necessary training, equipment, or experience. Though it cannot be inferred from these allegations that [the] defendant] *intentionally injured* [the] [d]ecedent by requiring him to de-energize the transformer, we hold that his alleged direction to send [the] [d]ecedent up that utility pole despite [the] [d]ecedent's severe lack of training and expertise is sufficient to create an inference that [the] defendant] was manifestly indifferent to the consequences of his actions.

*Id.* at 503, 751 S.E.2d at 239 (citation omitted).

## D. The Evidence Below Fails to Establish a *Pleasant* Claim

Randy Reinhardt argues that the above cases show that Plaintiff's forecasted evidence cannot meet the high bar necessary to establish a *Pleasant* claim. We agree. The uncontroverted evidence establishes that Dimension operated an award-winning safety program, which included quarterly safety briefings; Mr. Baker attended just such a program in the weeks before the accident, where Dimension explicitly instructed staff to "BE SURE TO TURN MACHINES OFF AND MAKE SURE THEY COME TO A COMPLETE STOP BEFORE BENDING OVER AND CLEANING AROUND MACHINERY." Dimension trained Mr. Baker on the Machine and its predecessor and made all employees aware of the danger of stepping into the area where Mr. Baker was killed. During a combined 15 years of operation, all of which occurred during Mr. Baker's employment: (1) nobody was injured on the Machine or its predecessor; (2) OSHA issued no violations related to the same; and (3) Dimension

received no safety complaints from staff about those bandsaws. In fact, Dimension received no serious OSHA violations, had no serious injuries, and maintained a DART rate below the national average for the entire three years preceding the accident. All evidence in the record indicated, without dispute, that the Reinhardts did not request or instruct Mr. Baker to clean around the machine. And, though ultimately insufficient to prevent Mr. Baker's accidental death, Dimension did make some attempt to cordon off and limit access to the rear of the Machine. Again, Plaintiff offered no evidence at summary judgment to rebut the above.

Attempted *Pleasant* claims have been dismissed even when employers knew of the danger and instructed the employee to engage in that activity anyway. *See Regan*, 127 N.C. App. at 229, 489 S.E.2d at 424-25 (holding there was no *Pleasant* claim when supervisory defendants instructed the seriously injured plaintiff to clean a working machine with an improperly removed guard despite a prior uncorrected serious OSHA violation for that exact issue); *Pendergrass*, 333 N.C. at 238, 424 S.E.2d at 394 (holding the same on similar facts). That OSHA ultimately cited Dimension[3] for the accident does not alone suffice. *Fagundes*, 251 N.C. App. at 740-41, 796 S.E.2d at 534. This case is likewise distinct from the egregious situation presented in *Vaughn*, where the employer had numerous past OSHA violations for the conduct at issue, the decedent was untrained, inexperienced, and prohibited from de-energizing

---

[3] Though plainly not dispositive, OSHA cited Dimension for a "serious," rather than a "willful," violation.

lines, and the defendant co-employee nonetheless directly ordered the decedent to undertake that dangerous activity with full knowledge of these facts. 230 N.C. App. at 486-89, 751 S.E.2d at 229-30.

Notwithstanding the above, Plaintiff argues that willful, wanton, and reckless negligence is established by three facts: (1) Randy Reinhardt knew of the hazard presented by the Machine because employees were told in safety trainings to stay clear of machines' moving parts while in operation; (2) Randy Reinhardt knew the Machine posed a life-threatening hazard because he told Mr. Baker's family after the accident that someone caught between the Machine's lower table arm and nearby pillar would be cut in half; and (3) plant management, based on the OSHA report, was aware of the fatal danger posed by the Machine but were too busy to complete the necessary fencing.[4]

Even if we take this evidence, accurately described, in the light most favorable to Plaintiff, it falls short of showing negligence so egregious as to be "equivalent in spirit to actual intent." *Pender*, 225 N.C. App. at 396, 737 S.E.2d at 782-83. While it may show that Randy Reinhardt knew of the potential fatal danger posed by the Machine, all the other evidence in the record shows that Dimension and the

---

[4] It is not plainly apparent from the OSHA report whether this statement was made by or about the Reinhardts, as the name(s) of interviewees were redacted along with the identity of the person(s) said to be aware of the hazard. Further, the statement that "most of the time they were too busy and there would have been buggy loads (carts with wood products) stacked in front of the machine and you would not be able to get in there," is reasonably read to mean that no permanent fencing was installed because the plant was so busy that carts always blocked off the area. Regardless, even if the statement is read as Plaintiff urges, it does not constitute willful negligence under *Pleasant*.

Reinhardts attempted to share that knowledge with Mr. Baker to reduce the risk of accident. Indeed, two of the facts cited by Plaintiff—Dimension's safety trainings and efforts to block off the area—show an intent, albeit insufficient, to keep Mr. Baker safe. Though ultimately unsuccessful in their efforts, the steps undertaken by Dimension and the Reinhardts—which included training Mr. Baker on the Machine, explicitly warning him and other employees from cleaning around the Machine while it was in operation, and taking some action to block off the area around the Machine—served to increase the relative safety of the situation. At no point did they intentionally undercut those efforts by, for example, directing Mr. Baker to clean the area while the Machine was running, ignoring prior OSHA violations or safety complaints concerning the Machine, and/or tasking him with an unfamiliar duty involving a plainly lethal hazard. *See Vaughn*, 230 N.C. App. at 503, 751 S.E.2d at 239 (holding such allegations by a deceased employee's estate sufficed to plead a *Pleasant* claim). Knowledge of a dangerous hazard, standing alone, does not establish a viable claim under *Pleasant*. *See Echols*, 116 N.C. App. at 376, 448 S.E.2d at 296 (holding facts did not establish a *Pleasant* claim at summary judgment "[e]ven if we assume that [the co-employee] knew that reaching under the safety gate could be dangerous"); *Pendergrass*, 333 N.C. at 238, 424 S.E.2d at 394 (holding facts were inadequate to support a *Pleasant* claim at summary judgment "[a]lthough [the defendant co-employees] may have known certain dangerous parts of the machine were unguarded when they instructed [the plaintiff] to work at the machine"); *Regan*,

127 N.C. App. at 229, 489 S.E.2d at 424-25 (holding summary judgment dismissing the plaintiff's *Pleasant* claim was proper "even though the evidence here shows that both [supervisors] were aware that the coater was unguarded and required plaintiff to manually clean the coater").

## III.    CONCLUSION

This case involves an undeniable tragedy.  We are cognizant of the heartbreak caused by Mr. Baker's death and the ensuing pain endured by his family.  But the State has guaranteed them some measure of recompense, however inadequate it may feel following the avoidable loss of a family member, through the guarantees of the Workers' Compensation Act:

> The Act seeks to balance competing interests and implement trade-offs between the rights of employees and their employers.  It provides for an injured employee's certain and sure recovery without having to prove employer negligence or face affirmative defenses such as contributory negligence and the fellow servant rule. *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244.  In return the Act limits the amount of recovery available for work-related injuries and removes the employee's right to pursue potentially larger damage awards in civil actions. *Id.* at 712, 325 S.E.2d at 246-47.

*Woodson*, 329 N.C. at 338, 407 S.E.2d at 227 (additional citations omitted).  And while there is an exception to this statutory arrangement where a co-employee's negligence is so gross as to be equivalent to intentional injury, *id.* at 339, 407 S.E.2d at 227, the binding precedents applying *Pleasant* discussed above preclude us from recognizing such a claim on the facts presented here.  As a result, we reverse the trial court's

order denying summary judgment for Randy Reinhardt and remand for entry of a judgment consistent with this opinion.

REVERSED AND REMANDED.

Judges MURPHY and ARROWOOD concur.